2015 AUG 17 AM 9: 32



## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| JENNIFER WIESE and CANDY BRADISON, individually and on behalf of all other similarly situated, | ) ) ) ) | No. 71806-1-I |
| Respondents, | ) ) ) | |
| v. | ) ) | |
| CACH, LLC, a Colorado limited liability company; and SQUARE TWO FINANCIAL CORP., a Delaware corporation, | ) ) ) ) ) ) | PUBLISHED OPINION |
| Appellants, | ) ) | |
| SUTTELL & HAMMER, P.S., a Washington corporation, | ) ) ) ) | |
| Defendant. | ) | |
| JENNIFER WIESE and CANDY BRADISON, individually and on behalf of all other similarly situated, | ) ) ) ) | No. 72090-2-I |
| Respondents, | ) ) ) | |
| v. | ) ) | |
| CACH, LLC, a Colorado limited liability company; and SQUARE TWO FINANCIAL CORP., a Delaware corporation, | ) ) ) ) ) ) | |
| Appellants, | ) | |

SUTTELL & HAMMER, P.S., a )
Washington corporation, )
)
)
Defendant. ) FILED: August 17, 2015

SCHINDLER, J. — Colorado limited liability company CACH LLC and its parent company Delaware corporation SquareTwo Financial appeal denial of the motion to compel arbitration of the claims alleged in a class action lawsuit. The class action complaint alleges CACH and SquareTwo engaged in a civil conspiracy and unfair and deceptive debt collection practices in violation of the Consumer Protection Act (CPA), chapter 19.86 RCW, and the Collection Agency Act (CAA), chapter 19.16 RCW. The complaint sought an award of damages and declaratory and injunctive relief. We hold that except for the claim that the judgments CACH previously obtained in the collection actions are subject to an action to vacate, the claims for civil conspiracy, violation of the CPA and the CAA, and declaratory and injunctive relief are subject to binding arbitration. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

## FACTS

On October 24, 2005, Candy Bradison opened a credit card account with FIA Card Services NA (FIA). FIA is a wholly owned subsidiary of Bank of America Corporation. A credit card agreement governed the account. Bradison used the credit card to make a number of purchases. The last payment that she made on her account was on April 14, 2008.

2

On September 15, 2008, FIA assigned to CACH LLC, a Colorado limited liability company (CACH), all "rights, title, and interest" to the past due balance Bradison owed of $20,494.37.

In April 2010, the law firm of Suttell & Hammer PS filed a complaint on behalf of CACH to collect the unpaid amount Bradison owed on the account. Bradison did not file a notice of appearance or an answer. CACH filed a motion for entry of a default judgment and an order of default.

On June 18, the superior court entered a default judgment against Bradison in the amount of $20,494.37 plus $8,232.71 in interest, $299.50 in costs, and $650.00 in attorney fees.

On August 23, 2007, Jennifer Wiese opened a credit card account with FIA. A credit card agreement governed the account. Wiese used the credit card to make a number of purchases. The last payment she made on her account was on October 22, 2008. On March 17, 2010, FIA assigned to CACH all "rights, title, and interest" to the past due amount Wiese owed of $4,972.94.

In January 2011, the law firm of Suttell & Hammer filed a complaint on behalf of CACH to collect the unpaid balance Wiese owed on the account. Wiese did not file a notice of appearance or an answer. CACH filed a motion for entry of a default judgment and an order of default.

On January 26, the court entered a default judgment against Wiese in the amount of $4,972.94 plus $845.19 in interest and $299.50 in costs.

3

On September 25, 2013, Bradison and Wiese filed a class action lawsuit against CACH and its parent company Delaware corporation SquareTwo Financial (SquareTwo).[1] The complaint defines the putative class as follows:

> All persons in Washington state against whom CACH, Square Two, and/or Suttell & Hammer have taken any action in the name of CACH to collect a defaulted or charged off debt while not licensed as a collection agency in accordance with RCW 19.16 et seq.

The complaint alleges CACH "is a shell corporation" and a "wholly-owned subsidiary of . . . Square Two, which operates CACH as its sole member." The complaint alleges neither CACH nor SquareTwo were licensed as a debt collection agency under chapter 19.16 RCW and asserts claims for civil conspiracy and unfair and deceptive acts and practices in violation of the Consumer Protection Act (CPA), chapter 19.86 RCW, and violation of the Collection Agency Act (CAA), chapter 19.16 RCW. The complaint seeks an award of compensatory and exemplary damages and declaratory and injunctive relief. The injunctive relief request includes requiring CACH to move to vacate the judgments obtained in the collection actions, to notify credit reporting bureaus of the vacated judgments and request removal of adverse credit history, and to return to the plaintiffs the amount collected plus interest.

On December 13, CACH filed an answer to the class action complaint. CACH admits that it is a Colorado limited liability company with headquarters in Denver and that SquareTwo is its sole member. CACH asserts that "it has a number of authorized agents and authorized representatives who act on its behalf" and "there is a servicing agreement with SquareTwo." CACH admits that it "purchases charged-off consumer credit card receivables ('accounts') from original creditor banking institutions, among

_____

[1] Bradison and Wiese also sued the law firm of Suttell & Hammer. Suttell & Hammer is not a party to the appeal.

4

others." CACH admits it "was not licensed as a collection agency at the time the respective suits were filed against Ms. Bradison and Ms. Wiese." In all other respects, CACH denies the allegations in the complaint. CACH asserts a number of affirmative defenses including that "some or all . . . of the putative class claims . . . are subject to valid agreements to arbitrate."

On December 24, CACH filed a motion to compel arbitration and dismiss the class action complaint. CACH argued the terms of the credit card agreement mandate arbitration of all claims alleged in the complaint. SquareTwo also filed a motion to compel arbitration and dismiss the complaint. SquareTwo argued it had the right to invoke the arbitration clause because it "is being sued as the parent of CACH and is facing identical claims as CACH." SquareTwo "relie[d] upon and adopt[ed] the reasoning and analysis provided by CACH" in support of the motion to compel arbitration.

In opposition, Bradison and Wiese argued the language of the credit card agreement precluded arbitration of the claims alleged in the class action complaint. In the alternative, they asserted CACH waived the right to arbitrate by obtaining judgments in the collection actions.

The court denied CACH's motion to compel arbitration. The court ruled CACH waived its right to compel arbitration by previously obtaining judgments in the collection actions. "The court finds that CACH chose to pursue its claims by litigating the debt owed in a judicial forum rather than through arbitration, and thus, waived its right to now compel arbitration in the same forum." Following supplemental briefing, the court ruled

that as the parent company of CACH, SquareTwo is bound by "CACH's waiver." CACH and SquareTwo appeal.

ANALYSIS

CACH argues the court erred in denying the motion to compel arbitration of the claims alleged in the class action complaint. CACH asserts the express language in the arbitration provision of the credit card agreement governs, and it did not waive the right to arbitrate the claims asserted in the class action lawsuit by obtaining judgments in the previous collection actions. We review the decision on a motion to compel arbitration de novo. Kilgore v. KeyBank, Nat'l Ass'n, 718 F.3d 1052, 1057 (9th Cir. 2013) (en banc); Townsend v. Quadrant Corp.; 173 Wn.2d 451, 455, 268 P.3d 917 (2012).

Arbitration Agreement

The credit card agreement states, "This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ('FAA')." Under the FAA, arbitration agreements are "a matter of contract" and "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." AT&T Mobility LLC v. Concepcion, ___ U.S. ___, 131 S. Ct. 1740, 1745, 179 L. Ed. 2d 742 (2011);[2] 9 U.S.C. § 2. The FAA mandates that "courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985).[3]

---

[2] Internal quotation marks omitted.
[3] Emphasis in original.

6

There is a strong presumption in favor of arbitration to " 'ensur[e] that private arbitration agreements are enforced.' " <u>Mortensen v. Bresnan Commc'ns, LLC</u>, 722 F.3d 1151, 1159 (9th Cir. 2013) (quoting <u>AT&T</u>, 131 S. Ct. at 1748); <u>see also</u> <u>Marmet Health Care Ctr., Inc. v. Brown</u>, ___ U.S. ___, 132 S. Ct. 1201, 1203, 182 L. Ed. 2d 42 (2012) (per curiam) (noting that the FAA reflects an "emphatic federal policy" in favor of arbitration).[4] Because any arbitration agreement within the scope of the FAA "shall be valid, irrevocable, and enforceable," "[a]ny doubts concerning the scope of arbitrable issues, construction of the contract, or a defense of delay, waiver, or the like should be resolved in favor of arbitration." 9 U.S.C. § 2; <u>Kinsey v. Bradley</u>, 53 Wn. App. 167, 170, 765 P.2d 1329 (1989) (citing <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)); <u>see also</u> <u>Gandee v. LDL Freedom Enters., Inc.</u>, 176 Wn.2d 598, 603, 293 P.3d 1197 (2013).

In determining whether to enforce an arbitration provision, we engage in a limited two-part inquiry:  first, whether the arbitration agreement is valid, and if so, whether the agreement encompasses the claims asserted. <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 627-28, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985). Bradison and Wiese do not challenge the validity of the arbitration provision in the credit card agreement. Bradison and Wiese assert the language of the agreement bars CACH and SquareTwo from invoking the arbitration provision of the credit card agreement.

The credit card agreement states, in pertinent part:

> Your Agreement with us consists of this Credit Card Agreement
> . . . . The terms of this Agreement apply to you if any of you applied for
> and were granted an account, used the account, maintained the account,

---

[4] Internal quotation marks omitted.

and/or otherwise accepted the account. You agree to the terms and conditions of this Agreement.

The "Arbitration and Litigation" section of the credit card agreement unequivocally states that any claim or dispute "arising from or relating in any way to this Agreement" shall be resolved by binding arbitration and may not be brought as a class action.

> Any claim or dispute ("Claim") by either you or us against the other, or against the employees, agents or assigns . . . , arising from or relating in any way to this Agreement or any prior Agreement or your account (whether under a statute, in contract, tort, or otherwise and whether for money damages, penalties or declaratory or equitable relief), shall, upon election by either you or us, be resolved by binding arbitration. . . .
>
>         . . . .
>
> Arbitration shall take place before a single arbitrator and on an individual basis without resort to any form of class action. Arbitration may be selected at any time unless a judgment has been rendered or the other party would suffer substantial prejudice by the delay in demanding arbitration.
>
>         . . . .
>
> No Claim submitted to arbitration is heard by a jury or may be brought as a class action or as a private attorney general. You do not have the right to act as a class representative or participate as a member of a class of claimants with respect to any Claim submitted to arbitration (Class Action Waiver). The parties to this Agreement acknowledge that the Class Action Waiver is material and essential to the arbitration of any disputes between the parties and is nonseverable from this agreement to arbitrate Claims. . . . **The Parties acknowledge and agree that under no circumstances will a class action be arbitrated**.
>
> This Arbitration and Litigation Section applies to all Claims now in existence or that may arise in the future. This Arbitration and Litigation Section shall survive the termination of your account with us as well as any voluntary payment of the debt in full by you, any bankruptcy by you or sale of the debt by us.
>
> For the purposes of this Arbitration and Litigation Section, "we" and "us" means FIA Card Services, N.A., its parent, subsidiaries, affiliates,

licensees, predecessors, successors, assigns, and any purchaser of your account, and all of their officers, directors, employees, agents and assigns of any and all of them. Additionally, "we" or "us" shall mean any third party providing benefits, services, or products in connection with the account (including but not limited to credit bureaus, merchants that accept any credit device issued under the account, rewards or enrollment services, credit insurance companies, debt collectors and all of their officers, directors, employees and agents) if, and only if, such a third party is named by you as a co-defendant in any Claim you assert against us.

**YOU UNDERSTAND AND AGREE THAT IF EITHER YOU OR WE ELECT TO ARBITRATE A CLAIM, THIS ARBITRATION SECTION PRECLUDES YOU AND US FROM HAVING A RIGHT OR OPPORTUNITY TO LITIGATE CLAIMS THROUGH COURT, OR TO PARTICIPATE OR BE REPRESENTED IN LITIGATION FILED IN COURT BY OTHERS. EXCEPT AS OTHERWISE PROVIDED ABOVE, ALL CLAIMS MUST BE RESOLVED THROUGH ARBITRATION IF YOU OR WE ELECT TO ARBITRATE.[5]**

Bradison and Wiese rely on the language that states, "Arbitration may be selected at any time <u>unless a judgment has been rendered</u>."[6] Bradison and Wiese claim that because CACH obtained default judgments in the previous collection actions, the language "unless a judgment has been rendered" bars arbitration of the claims alleged in the class action lawsuit. This argument ignores the specific language that states either party may invoke the right to arbitrate "<u>[a]ny claim or dispute</u>" and the well settled principle that the language of arbitration agreements must be construed as a whole.[7] <u>Adler v. Fred Lind Manor</u>, 153 Wn.2d 331, 351, 103 P.3d 773 (2004).

Further, an arbitration provision that encompasses any controversy "relating to" a contract is broader than language covering only claims "arising out" of a contract.

---

[5] Boldface in original.

[6] Emphasis added.

[7] Emphasis added.

9

McClure v. Tremaine, 77 Wn. App. 312, 314-15, 890 P.2d 466 (1995).[8] Here, the arbitration provision includes broad language stating that "[a]ny claim or dispute . . . arising from or relating in any way to this Agreement" shall be subject to binding arbitration.

> Any claim or dispute ("Claim") by either you or us against the other, or against the employees, agents or assigns . . . , arising from or relating in any way to this Agreement or any prior Agreement or your account (whether under a statute, in contract, tort, or otherwise and whether for money damages, penalties or declaratory or equitable relief), shall, upon election by either you or us, be resolved by binding arbitration.

When a valid arbitration provision includes such broad language, "all doubts are to be resolved in favor of arbitrability." Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 721 (9th Cir. 1999) (finding that the claims in the complaint need only "touch matters" covered by the agreement containing the arbitration provision).[9]

The language Bradison and Wiese rely on stating that "[a]rbitration may be selected at any time unless a judgment has been rendered" does not preclude arbitration of the civil conspiracy, the CPA, and the CAA claims alleged in the class action complaint. The court did not render a judgment in the collection actions on the civil conspiracy, CPA, and CAA claims alleged in the class action lawsuit. Filing a lawsuit in state court to collect a debt does not mean CACH cannot compel arbitration where the debtor brings a lawsuit alleging different claims. CACH is entitled to invoke the right to arbitrate the civil conspiracy, CPA, and CAA claims.

---

[8] Internal quotation marks omitted.
[9] Internal quotation marks omitted.

Claim To Vacate Judgments

By contrast, however, we conclude the express terms of the credit card agreement bar CACH from invoking the right to arbitrate the request to vacate the judgments entered in the collection actions.

The class action complaint alleges that the judgments obtained by CACH in the previous debt collection actions are subject to vacation. The complaint alleges that because neither CACH nor SquareTwo were licensed as collection agencies at the time they filed the collection actions against Bradison and Wiese, the judgments against them "and all other Class members" obtained in the collection actions are "void and voidable." Bradison and Wiese also assert prejudice to their legal position by being "compelled to submit to arbitration" because "CACH will . . . argue that the arbitrator should not—or cannot—second-guess [the] superior court judgments."

Typically, vacation of a judgment is sought under CR 60. However, Washington courts recognize that vacation of a judgment deemed to be void or procured through fraud may also be sought through an independent action in equity or a collateral attack. Corporate Loan & Sec. Co. v. Peterson, 64 Wn.2d 241, 243-44, 391 P.2d 199 (1964). The plaintiffs characterize their case as an "independent suit in equity which seeks to vacate the underlying collection action judgments."

CACH concedes that judgments have been rendered on the breach of contract claims filed by CACH in the underlying collection matters. CACH summarily responds that even if the exception to arbitration found in the contract—"unless a judgment has been rendered"—applies to the underlying collection matters, the plaintiffs are barred by res judicata from relitigating the underlying collection matters because the default

judgments were final judgments. The briefing on that issue in this appeal does not permit summary adjudication of the res judicata defense. This appeal arises from CACH's motion to compel arbitration, not from a motion for summary judgment on the vacatur claim.

We hold that the claim to vacate the judgments entered in the collection actions is not subject to arbitration under the language of the arbitration provision in the agreement. There is no dispute that a judgment was "rendered" in the collection actions. Arbitration may not be compelled as to the vacatur claim raised in plaintiffs' complaint because that claim concerns the underlying collection actions in which "judgment has been rendered." "[W]hen a complaint contains both arbitrable and nonarbitrable claims, the [FAA] requires courts to 'compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.' " KPMG LLP v. Cocchi, ___ U.S. ___, 132 S. Ct. 23, 26, 181 L. Ed. 2d 323 (2011) (quoting Byrd, 470 U.S. at 217). Accordingly, plaintiffs are entitled to have their vacatur action adjudicated in court. CACH's defense that the vacatur action is barred by res judicata may be raised on remand.

Waiver

Bradison and Wiese claim CACH waived the right to invoke arbitration by filing the debt collection actions in state court.

A party opposing arbitration bears a " 'heavy burden' " to show waiver of the right to arbitrate. Steele v. Lundgren, 85 Wn. App. 845, 852, 935 P.2d 671 (1997) (quoting Fisher v. A.G. Becker Paribas Inc., 791 F.2d 691, 694 (9th Cir. 1986)). Under federal

law, "the ultimate determination of waiver is reviewed de novo, as a matter of law."

Steele, 85 Wn. App. at 850-51; Microstrategy, Inc. v. Lauricia, 268 F.3d 244, 250 (4th

Cir. 2001). To establish waiver of the right to arbitration, the party opposing arbitration

must demonstrate " '(1) knowledge of an existing right to compel arbitration; (2) acts

inconsistent with that existing right; and (3) prejudice to the party opposing arbitration

resulting from such inconsistent acts.' " Letizia v. Prudential Bache Sec., Inc., 802 F.2d

1185, 1187 (9th Cir.1986) (quoting Fisher, 791 F.2d at 694). " 'Waiver will be found

when the party seeking arbitration substantially invokes the judicial process to the

detriment or prejudice of the other party.' " Subway Equip. Leasing Corp. v. Forte, 169

F.3d 324, 326 (5th Cir.1999) (quoting Miller Brewing Co. v. Fort Worth Distrib. Co., 781

F.2d 494, 497 (5th Cir.1986)).

"[A] party only invokes the judicial process to the extent it litigates a specific claim

it subsequently seeks to arbitrate." Subway, 169 F.3d at 328; see also Otis Hous. Ass'n

v. Ha, 165 Wn.2d 582, 588, 201 P.3d 309 (2009) (A party who has litigated certain

issues and lost "may not later seek to relitigate the same issue in a different forum.").

To show waiver of the right to arbitrate, the party must have previously litigated the

same legal and factual issues that the party now seeks to arbitrate. Microstrategy, 268

F.3d at 250; Subway, 169 F.3d at 328; Doctor's Assocs., Inc. v. Distajo, 107 F.3d 126,

133 (2nd Cir. 1997). "[O]nly prior litigation of the same legal and factual issues as those

the party now wants to arbitrate results in waiver of the right to arbitrate." Distajo, 107

F.3d at 133; see also Verbeek Props., LLC v. GreenCo Environmental, Inc., 159 Wn.

App. 82, 91-92, 246 P.3d 205 (2010).

Here, the previous debt collection actions are separate and distinct from the civil conspiracy, CPA, and CAA claims alleged in the class action complaint. The court in the collection actions on the delinquent credit card accounts "did not, was not asked to, and was not authorized to find facts or make conclusions of law" related to the civil conspiracy, CPA, and CAA claims CACH and SquareTwo now seek to arbitrate. See Verbeek, 159 Wn. App. at 92.

The record shows no prejudice from delay or expense as to the civil conspiracy, CPA, and CAA claims. Prejudice "refers to the inherent unfairness—in terms of delay, expense, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." Distajo, 107 F.3d at 134.[10] In determining prejudice, we consider the extent of the delay, the degree of litigation preceding the motion to compel, the resulting expenses, and other surrounding circumstances. Kramer v. Hammond, 943 F.2d 176, 179 (2nd Cir. 1991).

Bradison and Wiese filed the class action complaint on September 25, 2013. CACH filed an answer on December 13 asserting the right to arbitration. Approximately 10 days later, CACH filed a motion to compel arbitration. Contrary to the assertion of Bradison and Wiese, the attorney fees and costs incurred in the collection actions are unrelated to the claims asserted in the later filed class action lawsuit. "Incurring legal expenses inherent in litigation, without more, is insufficient evidence of prejudice to justify a finding of waiver." PPG Indus., Inc. v. Webster Auto Parts Inc., 128 F.3d 103, 107 (2nd Cir. 1997).

We conclude that pursuing the debt collection actions does not bar CACH or SquareTwo from invoking the arbitration provision for the civil conspiracy, CPA, and

---

[10] Emphasis added.

14

CAA claims alleged in the later filed class action complaint. See Distajo, 107 F.3d at 133 ("Finding waiver where a party has previously litigated an unrelated yet arbitrable dispute would effectively abrogate an arbitration clause once a party had litigated any issue relating to the underlying contract containing the arbitration clause.").[11]

SquareTwo

In the linked appeal, SquareTwo contends the court erred in denying the motion to compel arbitration. SquareTwo asserts that as the parent company of CACH, it is entitled to invoke arbitration of the claims asserted in the class action complaint.

Where the claims against a parent and subsidiary are "based on the same facts . . . and are inherently inseparable, a court may order arbitration of claims against the parent even though the parent is not a party to the arbitration agreement."[12] Townsend v. Quadrant Corp., 153 Wn. App. 870, 889, 224 P.3d 818 (2009) (citing J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 320-21 (4th Cir. 1988) ("If the parent corporation was forced to try the case, the arbitration proceedings would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.");[13] see also PRM Energy Sys., Inc. v. Primenergy, LLC, 592 F.3d 830, 837 (8th Cir. 2010) (recognizing court may allow a nonsignatory to compel arbitration under "agency and related principles . . . when, as a result of the nonsignatory's close relationship with a signatory, a failure to do so would eviscerate the arbitration agreement"); Comer v. Micor, Inc., 436 F.3d 1098, 1101 (9th Cir. 2006) ("nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and

---

[11] Emphasis in original.

[12] Therefore, we need not address SquareTwo's arguments based on the doctrine of estoppel and third party beneficiary.

[13] Internal quotation marks omitted.

agency principles").[14] As the parent company of CACH, except for the claim to vacate the judgments previously obtained in the collection actions, SquareTwo is entitled to arbitrate the civil conspiracy, CPA, and CAA claims.

In sum, we hold that except for the claim to vacate the judgments obtained in the previous collection actions that are subject to a motion to vacate, all of the other claims alleged against CACH and SquareTwo in the class action complaint including civil conspiracy, violation of the CPA and the CAA, and declaratory and injunctive relief are subject to binding arbitration. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

Schindler, J.

WE CONCUR:

Spearman, C.J.

Becker, J.

---

[14] Internal quotation marks omitted.