# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

TERENCE BUTLER,

             Respondent,

    v.

RANDALL T. THOMSEN, individually
and on behalf of the marital community
comprised of RANDALL T. THOMSEN
and JANE DOE THOMSEN; CALFO
HARRIGAN LEYH & EAKES, LLP,
a Washington Professional Limited
Liability Partnership, f/k/a DANIELSON
HARRIGAN LEYH & TOLLEFSON, LLP,
JOHN JOHNSON,

             Appellants

No. 74258-2-I

UNPUBLISHED OPINION

FILED: August 29, 2016

VERELLEN, C.J. — When Terence Butler filed this legal malpractice lawsuit against his former attorney, Randall Thomsen and Thomsen's law firm, Calfo Harrigan Leyh & Eakes (Thomsen), Thomsen sought to invoke an arbitration provision contained in a settlement agreement drafted by Thomsen resolving claims between Butler and third parties. The arbitration clause extends to "[a]ny dispute arising out of" the settlement agreement.[1] Because the malpractice claim is based upon an allegedly overbroad release provision drafted by Thomsen, Thomsen argues the scope of Butler's release is a dispute arising out of the settlement agreement. But Thomsen does not

---

[1] Clerk's Papers (CP) at 68, ¶ 19.

establish an objective manifestation of intent to extend arbitration to any portion of a subsequent malpractice claim against him. Neither does he establish any disclosure to Butler that by signing the settlement agreement, he was agreeing to arbitrate any portion of a malpractice claim he might have against Thomsen. We conclude Thomsen is not entitled to invoke arbitration and affirm the trial court.[2]

## FACTS

### I. White v. ImageSource, Zvirzdys, Sutherland, and Butler

Terence Butler, Shadrach White, Victor Zvirzdys, and Terry Sutherland were equal co-owners of ImageSource, a company that sells and services document imaging software and equipment. In 2011, White resigned from the company and sued ImageSource and the remaining three owners, asserting claims for wrongful (constructive) termination, breach of fiduciary duty, and shareholder oppression, among others. Butler, Zvirzdys, Sutherland, and ImageSource retained Randall Thomsen and his law firm Calfo Harrigan Leyh & Eakes to jointly represent them in defense of White's claims.[3]

In 2012, the parties to the White lawsuit mediated and signed a CR 2A agreement by which White was to release all claims against the defendants and the defendants to release all claims against White. Seven months later, Thomsen drafted and circulated the final settlement documents contemplated by the CR 2A agreement. The resulting release and settlement agreement provided in pertinent part:

---

[2] We also grant Butler's motion to strike the portions of Thomsen's briefs containing matters outside the record.

[3] The fee agreement did not include an arbitration clause.

10. Complete Release. In consideration of the promises set forth herein, the Parties agree to release one another, their spouses, their respective heirs, agents, attorneys, employees, directors, heirs, assigns and personal representatives from any and all charges, claims, and actions, whether known or unknown, arising prior to the date of this Agreement and arising directly or indirectly out of the Lawsuit or their previous dealings. This release specially includes and releases all claims that were asserted or could have been asserted in the Lawsuit by White relating to ImageSource (including employment issues) and any claims or counterclaims that were asserted or could have been asserted by Defendants in the Lawsuit against White.

. . . .

19. Dispute Resolution. *Any dispute arising out of this Agreement* shall be settled by arbitration before Judicial Dispute Resolution ("JDR") in Seattle, using Paris Kallas or a single arbitrator as agreed by the Parties.[4]

*II. Butler v. ImageSource, Zvirzdys, and Sutherland*

Several months later, ImageSource terminated Butler's employment. Butler then commenced a separate lawsuit against Sutherland, Zvirzdys, and ImageSource alleging claims for breach of fiduciary duty, oppression of minority shareholder, conversion, and willful failure to pay wages, among others. None of the defendants demanded arbitration in their answers to Butler's lawsuit.[5] Instead, in response to Butler's motion for partial summary judgment on his breach of fiduciary duty and failure to pay wages claims, the defendants asserted that Butler's claims against them were barred by virtue of the release in the White settlement agreement. The trial court agreed and denied Butler's motion:

The plain and unambiguous language of the release contained in paragraph 10 of the [White] Release and Settlement Agreement applies to all claims by and between the Parties thereto, arising out of their previous dealings. The claims for relief asserted in the Motion arise from dealings

---

[4] CP at 67-68 (emphasis added).

[5] See CR 8(c) (arbitration is an affirmative defense).

3

of the Parties pre-dating the January 2, 2013 date of the Release and Settlement Agreement. Those claims have therefore been released as a matter of law.[6]

No one sought review.

### III. Butler v. Thomsen and Calfo Harrigan

Thereafter, while Butler's remaining claims against Sutherland, Zvirzdys, and ImageSource were still pending (shareholder oppression, conversion, conspiracy, unjust enrichment, accounting, removal of directors, declaratory relief, criminal profiteering, and derivative liability), Butler brought this legal malpractice action against his former lawyer Thomsen and the Calfo Harrigan law firm based in part on the trial court's partial summary judgment in Butler v. ImageSource that the White release covered his breach of fiduciary duty and failure to pay wages claims.[7] Thomsen then moved to compel arbitration based on the arbitration clause he drafted as part of the White settlement agreement. The trial court denied his motion.

Thomsen appeals.[8]

---

[6] CP at 74. The court also determined Butler's breach of fiduciary duty claim was based on the alleged wrongful use of corporate funds and thus, was based on harm to the corporation. The court therefore concluded Butler did not have standing to pursue that claim because it belonged to the corporation. Butler later amended his complaint to assert derivative claims.

[7] Butler also asserted claims against Thomsen for breach of contract and breach of fiduciary duty.

[8] An order denying a motion to compel arbitration is appealable as a matter of right under RAP 2.2(a)(3). Stein v. Geonerco, Inc., 105 Wn. App. 41, 44-45, 17 P.3d 1266 (2001).

## ANALYSIS

*Arbitrability*

Thomsen does not contend that the White settlement agreement constituted a release of Butler's legal malpractice claims against Thomsen. Neither does he contend that the malpractice claim itself is subject to arbitration. Rather, Thomsen contends that the broad language of the arbitration clause—"[a]ny dispute arising out of" the settlement agreement—extends to the question of whether the release Butler signed encompassed his claims against other shareholders and the corporation. According to Thomsen, even though that question is critical to Butler's malpractice claim against him, it is a discrete dispute subject to arbitration, and Thomsen can invoke arbitration even though he is a nonsignatory to the White settlement agreement.

We review the decision on a motion to compel arbitration de novo.[9] A trial court's determination regarding the arbitrability of a dispute is also reviewed de novo.[10]

"Washington law vests courts with the power to determine 'whether . . . a controversy is subject to an agreement to arbitrate.'"[11] "The arbitrability of a dispute is determined by examining the arbitration agreement between the parties."[12] "'Although it is the court's duty to determine whether the parties have agreed to arbitrate a particular dispute, the court cannot decide the merits of the controversy, but may determine only

---

[9] Saleemi v. Doctor's Assocs., Inc., 176 Wn.2d 368, 375, 292 P.3d 108 (2013); Wiese v. CACH, LLC, 189 Wn. App. 466, 473, 358 P.3d 1213 (2015).

[10] Heights at Issaquah Ridge, Owners Ass'n v. Burton Landscape Grp., Inc., 148 Wn. App. 400, 404, 200 P.3d 254 (2009).

[11] Saleemi, 176 Wn.2d at 376 (quoting RCW 7.04A.060(2)).

[12] In re Marriage of Pascale, 173 Wn. App. 836, 842, 295 P.3d 805 (2013) (citing Heights, 148 Wn. App. at 403).

5

whether the grievant has made a claim which *on its face* is governed by the contract."[13] "If the reviewing court 'can fairly say that the parties' arbitration agreement covers the dispute, the inquiry ends because Washington strongly favors arbitration.'"[14]

"In interpreting an arbitration clause, the intentions of the parties as expressed in the agreement control."[15] This court follows the "objective manifestation theory" of contract interpretation, focusing on the "reasonable meaning of the contract language to determine the parties' intent."[16] In Washington, the intent of the parties to the agreement may be discovered not only from the actual language of the agreement but also from "'the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of the respective interpretations advocated by the parties.'"[17]

The arbitration clause in the White settlement agreement provided that "[a]ny dispute arising out of this Agreement shall be settled by arbitration before Judicial Dispute Resolution ('JDR') in Seattle, using Paris Kallas or a single arbitrator as agreed

---

[13] Heights, 148 Wn. App. at 405 (quoting Peninsula Sch. Dist. No. 401 v. Pub. Sch. Employees of Peninsula, 130 Wn.2d 401, 413, 924 P.2d 13 (1996)).

[14] Pascale, 173 Wn. App. at 842 (quoting Davis v. Gen. Dynamics Land Sys., 152 Wn. App. 715, 718, 217 P.3d 1191 (2009)).

[15] Tacoma Narrows Constructors v. Nippon Steel-Kawada Bridge, Inc., 138 Wn. App. 203, 216, 156 P.3d 293 (2007).

[16] Viking Bank v. Firgrove Commons 3, LLC, 183 Wn. App. 706, 712-13, 334 P.3d 116 (2014); Berg v. Hudesman, 115 Wn.2d 657, 663, 801 P.2d 222 (1990) ("'The cardinal rule with which all interpretation begins is that its purpose is to ascertain the intention of the parties.'" (quoting Corbin, *The Interpretation of Words and the Parol Evidence Rule*, 50 CORNELL L. QUAR. 161, 162 (1965))).

[17] Tanner Elec. Co-op. v. Puget Sound Power & Light Co., 128 Wn.2d 656, 674, 911 P.2d 1301 (1996) (quoting Scott Galvanizing, Inc. v. Nw. Enviroservices, Inc., 120 Wn.2d 573, 580-81, 844 P.2d 428 (1993)).

by the Parties."[18] The settlement agreement specifically defined "the Parties" to consist of "Shadrach White (individually and on behalf of his marital community), ImageSource, Inc., a Washington corporation ('ImageSource'), Terry Sutherland ('Sutherland'), Terrence Butler ('Butler') and Victor Zvirzdys ('Zvirzdys') (each individually and on behalf of their respective marital communities), and CloudPWR LLC, a Washington limited liability company (collectively, "the Parties")."[19]

We are unpersuaded by Thomsen's contentions. First, the objective manifestation of intent in signing the arbitration clause is not so broad that "any dispute" includes a critical portion of a legal malpractice claim based on the theory that Thomsen drafted an overbroad release clause.[20] The provisions for selecting an alternative arbitrator are entirely inconsistent with Thomsen's broad reading of the arbitration clause. The parties, as defined in the settlement agreement, agreed to use Paris Kallas as the arbitrator, "or a single arbitrator as agreed by the Parties."[21] If Thomsen is correct that the arbitration clause extends to a portion of Butler's malpractice claim against him, then the settlement agreement would contemplate his participation in the selection of an arbitrator. And the lack of any role in that selection is an objective manifestation of intent that no portion of the malpractice claim is subject to arbitration.

---

[18] CP at 68.

[19] CP at 64 (emphasis added). Thomsen concedes he is not a party to the settlement agreement. Reply Br. at 1.

[20] See Nelson v. Westport Shipyard, Inc., 140 Wn. App. 102, 113-14, 163 P.3d 807 (2007) (disputes "arising out of this Agreement" is "much narrower" than disputes "arising from or relating to this Agreement"); Wiese, 189 Wn. App. at 477 ("an arbitration provision that encompasses any controversy 'relating to' a contract is broader than language covering only claims 'arising out' of a contract" (quoting McClure v. Tremaine, 77 Wn. App. 312, 314-15, 890 P.2d 466 (1995))).

[21] CP at 68, ¶ 19.

Second, although "Washington has long favored arbitration of disputes, [and] contract law still provides that 'parties to a contract may determine the specific terms of the agreement, but . . . the contract provisions are subject to limitation and invalidation if they contravene public policy.'"[22] An agreement is contrary to public policy if it has a tendency to be against the public good.[23] Even assuming that Thomsen qualifies as a nonsignatory entitled to invoke arbitration of a client's malpractice claim, there is a public policy concern. Thomsen represented Butler when he drafted the arbitration clause he now seeks to invoke.

An attorney has a fiduciary duty to advise a client of the substance of an agreement with a third party drafted by the attorney.[24] And Washington State Bar's Ethics Opinion 1670 expressly provides that the inclusion of an arbitration provision in a fee agreement requires it be "done only with full disclosure to the client."[25] RPC 1.4(b)

---

[22] Tjart v. Smith Barney, Inc., 107 Wn. App. 885, 901, 28 P.3d 823 (2001) (quoting Whitaker v. Spiegel Inc., 95 Wn.2d 661, 667, 623 P.2d 1147 (1981), amended, 95 Wn.2d 661, 637 P.2d 235 (1981)).

[23] Id. at 899.

[24] See Perez v. Pappas, 98 Wn.2d 835, 840-41, 659 P.2d 475 (1983) ("the attorney-client relationship is a fiduciary one as a matter of law and thus the attorney owes the highest duty to the client"); accord Versuslaw, Inc. v. Stoel Rives, LLP, 127 Wn. App. 309, 333, 111 P.3d 866 (2005); see also Burien Motors, Inc. v. Balch, 9 Wn. App. 573, 577, 513 P.2d 582 (1973) ("A fiduciary such as an attorney must exercise reasonable care. He must protect his client's interest out of a sense of loyalty, good faith, and duty to exercise reasonable care. Such protection may well involve the duty to investigate the law and facts applicable to the transaction and to disclose the results to his clients. The duty is similar to the duty to disclose imposed upon a trustee who must disclose all material facts concerning the transaction the trustee knows or should know.").

[25] WASHINGTON STATE BAR ASS'N Advisory Opinion 1670 (1996) (issued before adoption of the amended RPC); see generally Am. Bar Ass'n Comm. on Ethics & Prof'l Responsibility, Formal Op. 02-425 (2002) (emphasizing that the client must be "fully apprised of the advantages and disadvantages of arbitration" and have "been given

provides, "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Comment 5 to the rule states:

> The client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued . . . . For example, when there is time to explain a proposal made in a negotiation, the lawyer should review all important provisions with the client before proceeding to an agreement. . . . The guiding principle is that the lawyer should fulfill reasonable client expectations for information consistent with the duty to act in the client's best interests, and the client's overall requirements as to the character of representation.

"[T]he relationship of attorney-client places upon the attorney the strict duty of full disclosure."[26]

> "The relation of attorney and client has always been regarded as one of special trust and confidence. The law therefore requires that all dealings between an attorney and his client shall be characterized by the utmost fairness and good faith, and it scrutinizes with great closeness all transactions had between them. So strict is the rule on this subject that dealings between an attorney and his client are held, as against the attorney, to be prima facie fraudulent, and to sustain a transaction of advantage to himself with his client the attorney has the burden of showing not only that he used no undue influence but that he gave his client all the information and advice which it would have been his duty to give if he himself had not been interested, and that the transaction was as beneficial to the client as it would have been had the client dealt with a stranger."[27]

Consistent with his fiduciary duty and the ethics opinion, we conclude Thomsen had a duty to disclose to Butler that, by signing the agreement with the third party, Butler was agreeing to arbitration of what might be a critical part of a potential

---

sufficient information to permit [him] to make an informed decision about whether to agree to the inclusion of the arbitration provision in the retainer agreement").

[26] Transcon. Ins. Co. v. Faler, 9 Wn. App. 610, 612, 513 P.2d 864 (1973).

[27] In re Beakley, 6 Wn.2d 410, 423-24, 107 P.2d 1097 (1940) (quoting 7 C.J.S. Attorney and Client, § 127).

malpractice claim against Thomsen. Absent a showing of some disclosure to Butler at the time he signed the settlement agreement, we conclude Thomsen is not entitled to invoke the arbitration clause he drafted.

The trial court did not err in denying Thomsen's motion to compel arbitration.

*Motion to Strike*

Butler moves to strike references in Thomsen's opening brief that are not supported by the record. Specifically he challenges Thomsen's references to the dismissal of Butler's remaining claims in Butler v. ImageSource following settlement, and that Butler had separate counsel review the settlement agreement before Butler signed it. Neither of those facts are part of the record on appeal. Thomsen does not satisfy the demanding requirements of RAP 9.11, and judicial notice is not available under these circumstances. The motion to strike is granted.

Affirmed.

_____
Cox, J.

WE CONCUR:

_____
Trickey, J

10