**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| YEI A. SUN; LIPING M. SUN, husband and wife; HAIMING OWEN SUN, an individual, *Plaintiffs-Appellants*, | No. 16-35277 D.C. No. 2:15-cv-01385-JCC |
| v. | |
| ADVANCED CHINA HEALTHCARE, INC., a Cayman Islands company; ALICIA KAO, an individual, *Defendants-Appellees*. | OPINION |

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, Senior District Judge, Presiding

Argued and Submitted May 10, 2018
Seattle, Washington

Filed August 22, 2018

Before: Ronald M. Gould and Sandra S. Ikuta, Circuit
Judges, and John R. Tunheim,[*] Chief District Judge.

Opinion by Judge Ikuta

---

[*] The Honorable John R. Tunheim, Chief United States District Judge
for the District of Minnesota, sitting by designation.

## SUMMARY[**]

### Forum Selection

The panel affirmed the district court's dismissal of a diversity action that was filed in Washington district court, based on a forum-selection clause in share purchase agreements requiring that any disputes related to the parties' agreements be adjudicated in California state court.

The panel held that the plaintiffs had not carried their heavy burden of showing the sort of exceptional circumstances that would justify disregarding a forum-selection clause. The panel applied federal contract law to interpret the scope of the clause, and concluded that because the plaintiffs' dispute was logically connected to the parties' agreements, it was subject to the forum-selection clause. The panel rejected plaintiffs' argument that applying the forum-selection clause would contravene a strong public policy of Washington in preserving its citizens' remedies under the Washington State Securities Act. The panel also rejected plaintiffs' contention that they would be deprived of their day in court if they had to bring their case in California court.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Stephen C. Willey (argued) and Matthew H. Rice, Savitt Bruce & Willey LLP, Seattle, Washington, for Plaintiffs-Appellants.

Darren A. Feider (argued) and M. Edward Taylor, Sebris Busto James, Bellevue, Washington, for Defendants-Appellees.

**OPINION**

IKUTA, Circuit Judge:

Yei Sun, Liping Sun, and Haiming Sun were persuaded by Alicia Kao to invest $2.8 million in Advanced China Healthcare. The Suns entered into two Share Purchase Agreements, each of which contained a forum-selection clause that required any disputes "arising out of or related to" the agreements to be adjudicated in California state court. Notwithstanding the forum-selection clause, the Suns brought suit against Kao under Washington securities law in a Washington district court. The district court concluded that the Suns were bound by the forum-selection clause, and dismissed the action. Because the Suns have not carried their heavy burden of showing the sort of exceptional circumstances that would justify disregarding a forum-selection clause, we affirm the district court.

I

According to the Suns' complaint, in December 2010, Kao met with the Suns in Seattle, Washington. Kao told the

Suns that she was the President of Advanced China Healthcare, a company formed to provide Western-style medical services (such as sports medicine, pain management, and physical therapy) in China. According to Kao, Advanced China Healthcare had received substantial investor funding as well as all necessary licenses from the Chinese government, and intended to open its first medical center in Shanghai in 2011. Kao made a number of other representations about the status of the project to induce the Suns to invest in Advance China Healthcare's Series B offering. She told the Suns that "all funds would be used for the development of medical centers in China," and stated that a healthcare venture capital fund in Alabama had conducted extensive due diligence on the project and was investing in the Series B offering.

While investigating this potential investment, the Suns contacted Robert Claassen, who was a partner in Paul Hastings, LLP, and the head of the corporate department in its Palo Alto, California office. Claassen informed the Suns that Advanced China Healthcare was a good investment in which his firm and he himself had invested, and confirmed that the Alabama venture capital fund had performed extensive due diligence before investing.

Following these representations, the Suns executed two separate, but identical, Series B Preference Share Purchase Agreements and invested a total of $2.8 million in Advanced China Healthcare. Both agreements included a forum-selection clause, entitled "Jurisdiction; Venue," which stated:

> With respect to any disputes arising out of or related to this Agreement, the parties consent to the exclusive jurisdiction of, and venue in, the state courts in Santa Clara County in the

State of California (or in the event of exclusive federal jurisdiction, the courts of the Northern District of California).[1]

At the closing, which took place in Paul Hastings's Palo Alto office, the Suns sent their funds via a wire transfer to Paul Hastings's account in Los Angeles, California.

According to the Suns' complaint, several years after closing, the Suns discovered that Kao had misled them. The Suns alleged that they had been shown fabricated financial records of Advanced China Healthcare. They also alleged that Kao had not used their $2.8 million investment for the development and opening of medical centers, but had converted and misappropriated it for her own use or to cover up her prior misappropriation of other investments.

The Suns sued Kao and Advanced China Healthcare in Washington district court under § 21.20.430(1) of the Washington State Securities Act (WSSA), which imposes liability on a person who "sells a security in violation of any provision[] of RCW 21.20.010." Wash. Rev. Code § 21.20.430(1). Section 21.20.010 makes it unlawful for a person to take certain fraudulent actions in connection with the offer or sale of a security. A "person who directly

---

[1] The agreements also contained a choice-of-law provision, which stated:

> This Agreement shall be governed in all respects by the internal laws of the State of California as applied to agreements entered into among California residents to be performed entirely within California, without regard to principles of conflicts of law.

or indirectly controls" such a seller may also be held liable. § 21.20.430(3).

On Kao's motion, the district court dismissed the complaint because the Share Purchase Agreements contained a forum-selection clause that applied to the dispute, was valid and enforceable, and required the dispute to be resolved in California. The court conditioned its dismissal on several requirements: Kao had to "submit to the jurisdiction of the California court in which Plaintiffs file suit, so long as the court is proper under the forum selection clause"; the statutes of limitations on the Suns' California and Washington state-law claims had to remain tolled for the pendency of the current lawsuit; Kao could not "argue that California securities laws do not apply to the disputed transaction because it occurred in Washington State"; and Kao had to waive service of process.

The Suns timely appealed, arguing that the forum-selection clause in the Share Purchase Agreements was not enforceable. First, they argue that, as a matter of contract, the forum-selection clause does not apply to their action. Alternatively, they argue that the clause is not valid and enforceable because their action under the WSSA embodies an important public policy that cannot be waived, and California is not an adequate alternative forum because it deprives them of any remedy.

We have jurisdiction under 28 U.S.C. § 1291. We review a district court's dismissal of a complaint for failure to comply with a valid and enforceable forum-selection clause for abuse of discretion. *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009) (per curiam). We review the district

court's "application of the principles of contract interpretation" de novo.  *Id.*

## II

We first address the Suns' argument that the Share Purchase Agreements' forum-selection clause does not apply to their complaint.  We apply federal contract law to interpret the scope of a forum-selection clause even in diversity actions, such as this one.  *Doe 1*, 552 F.3d at 1081; *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 512–13 (9th Cir. 1988).  In interpreting a forum-selection clause under federal law, "we look for guidance 'to general principles for interpreting contracts.'"  *Doe 1*, 552 F.3d at 1081 (quoting *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999)); *see also Manetti-Farrow*, 858 F.2d at 513–14.

By its terms, the forum-selection clause here applies to "any disputes arising out of or related to" the Share Purchase Agreements.  Accordingly, we must determine whether the Suns' claim that Kao violated the WSSA constitutes such a dispute.  We have held that forum-selection clauses covering disputes "arising out of" a particular agreement apply only to disputes "relating to the interpretation and performance of the contract itself."  *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011) (quoting *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983)).  By contrast, forum-selection clauses covering disputes "relating to" a particular agreement apply to any disputes that reference the agreement or have some "logical or causal connection" to the agreement. *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997) (Alito, J.) (quoting *Webster's Third New International*

*Dictionary* 1916 (1971)).  The dispute need not grow out of the contract or require interpretation of the contract in order to relate to the contract.  *See Cape Flattery*, 647 F.3d at 922; *Huffington v. T.C. Grp., LLC*, 637 F.3d 18, 22 & n.2 (1st Cir. 2011) (explaining that the phrase "relating to" is synonymous with the phrases "with respect to," "with reference to," "in connection with," and "associated with"); *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128–29 (2d Cir. 2001) (Sotomayor, J.) (same).

Applying this framework, the Share Purchase Agreements' forum-selection clause covers the present suit. Because the clause covers "any disputes . . . *related to* this Agreement," it applies to any dispute that has some logical or causal connection to the parties' agreement.  Here, the Suns' claim that Kao engaged in various fraudulent practices to induce them to invest $2.8 million in Advanced China Healthcare relates to the Share Purchase Agreements because the Suns invested pursuant to those agreements.  *See Huffington*, 637 F.3d at 22 (holding that a forum-selection clause covered state-law securities claims because the plaintiff's purchase of privately offered securities "could not have been made without the agreement"); *Carter's of New Bedford, Inc. v. Nike, Inc.*, 790 F.3d 289, 293 (1st Cir. 2015) (holding that a claim for unfair competition fell within scope of "in connection with" clause).  Indeed, the Suns' complaint itself alleges that they executed the Share Purchase Agreements "in reasonable and justifiable reliance on the representations of Kao."  The Suns argue that their claims do not relate to the Share Purchase Agreements because they are challenging fraudulent conduct that occurred before the agreements were executed by the parties.  This argument is belied by the Suns' complaint itself, which alleges that Kao is liable under the WSSA as a seller of securities (or as a

person controlling such a seller), which occurred when the Suns entered into the agreements. Because the Suns' dispute is logically connected to the parties' agreements, it is subject to the forum-selection clause.

## III

We next consider whether the forum-selection clause is enforceable. "[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). In conducting this analysis, we are bound by the Supreme Court's direction in *Atlantic Marine*. Although *Atlantic Marine* considered the enforceability of a forum-selection clause under 28 U.S.C. § 1404(a),[2] the Court explained that § 1404(a) merely codified the doctrine of forum non conveniens "for the subset of cases in which the transferee forum is within the federal court system." *Id.* "[B]ecause both § 1404(a) and the forum non conveniens doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum." *Id.* at 61.

*Atlantic Marine* provided the following approach for analyzing the enforceability of a forum-selection clause. As a general rule, "[w]hen the parties have agreed to a valid

---

[2] 28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Id.* at 62. Unlike the situation where there is no forum-selection clause,[3] the plaintiff "must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Id.* at 64. The plaintiff's subsequent choice of forum merits no weight. *Id.* at 63–64.

Second, a court must deem all factors relating to the private interests of the parties (such as the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive") as weighing "entirely in favor of the preselected forum." *Id.* at 64, 62 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). While a court may consider factors relating to the public interest (such as "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law," *id.* at 64, 62 n.6 (alteration in original) (quoting *Piper Aircraft*, 454 U.S. at 241 n.6)), those factors will rarely defeat a transfer motion. *Id.* at 64.

---

[3] According to *Atlantic Marine*, when there is no forum-selection clause, a court "must evaluate both the convenience of the parties and various public-interest considerations." 571 U.S. at 62. "Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Id.* at 62–63 (quoting 28 U.S.C. § 1404(a)).

The practical result is that a forum-selection clause "should control except in unusual cases." *Id.* at 64. This result is required, according to *Atlantic Marine*, because a forum-selection clause "represents the parties' agreement as to the most proper forum." *Id.* at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). It "may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place." *Id.* at 66. Therefore, the "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id.* at 63 (quoting *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring)). In short, "[o]nly under extraordinary circumstances unrelated to the convenience of the parties" should a motion to enforce a forum-selection clause be denied. *Id.* at 62.

*Atlantic Marine* provides little guidance, however, regarding what constitutes an "exceptional reason" or "extraordinary circumstances" in which courts should not give controlling weight to a valid forum-selection clause. Therefore, we turn to the Court's prior guidance on this issue in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). *M/S Bremen* held that a forum-selection clause was controlling unless the plaintiff made a strong showing that: (1) the clause is invalid due to "fraud or overreaching," (2) "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision," or (3) "trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court." 407 U.S. at 15, 18; *see also Petersen v. Boeing*

*Co.*, 715 F.3d 276, 280 (9th Cir. 2013).[4]  Here, the Suns do not contend that the forum-selection clause in their agreements is the product of fraud or overreaching, so only the latter two exceptions are at issue.  We view these exceptions through the lens provided by *Atlantic Marine.*

A

The Suns first argue that applying the forum-selection clause would contravene a strong public policy of Washington in preserving its citizens' remedies under the WSSA.  According to the Suns, the Washington legislature declared such a public policy by including the following antiwaiver provision in the WSSA: "Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this chapter or any rule or order hereunder is void."  Wash. Rev. Code § 21.20.430(5).

We rejected a similar argument in *Richards v. Lloyd's of London*, 135 F.3d 1289 (9th Cir. 1998) (en banc).  In *Richards*, citizens or residents of the United States sued a foreign firm in California district court under federal and state securities laws.  *Id.* at 1291–92.  Their investment agreement contained a forum-selection clause requiring the parties to adjudicate any disputes in "the courts of England" and under "the laws of England."  *Id.* at 1292.  The plaintiffs argued that

---

[4] Our analysis of the *M/S Bremen* exceptions does not change when the agreement includes a choice-of-law clause in addition to a forum-selection clause. We generally treat the analysis as coextensive and consider the clauses' impact together.  *See, e.g.*, *Barnett v. DynCorp Int'l, LLC.*, 831 F.3d 296, 308–09 (5th Cir. 2016); *Huffington*, 637 F.3d at 21–22; *Richards v. Lloyd's of London*, 135 F.3d 1289, 1293–97 (9th Cir. 1998) (en banc).

the forum-selection clause did not apply due to the antiwaiver provisions of the federal securities laws and the strong public policy of preserving investors' remedies under federal and state securities laws. *Id.* at 1293–94.[5] We first rejected the plaintiffs' argument that the antiwaiver provisions barred enforcement of the forum-selection clause, holding, in effect, that the strong federal policy in favor of enforcement of such clauses superseded the statutory antiwaiver provision. *Id.* at 1294–95; *see also id.* at 1298 (Thomas, J., dissenting). In reaching this conclusion, we relied on the fact that plaintiffs could still pursue relief for fraud, breach of fiduciary duty, or negligent misrepresentation under British law. *Richards*, 135 F.3d at 1296; *see also Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 723 (9th Cir. 1999) (enforcing a forum-selection clause because the plaintiffs would have some "reasonable recourse" in the foreign forum, even though they could not bring claims under United States antitrust laws).[6]

---

[5] The plaintiffs referenced two antiwaiver provisions of the federal securities laws. Under 15 U.S.C. § 78cc(a), "[a]ny condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of a self-regulatory organization, shall be void." Under 15 U.S.C. § 77n, "[a]ny condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void."

[6] We note that we would give more weight to Washington's public policy interests if plaintiffs would be denied any relief in a California forum. *See Richards*, 135 F.3d at 1296 (stating that "were English law so deficient that the [plaintiffs] would be deprived of any reasonable recourse, we would have to subject the [forum-selection and choice-of-law] clauses to another level of scrutiny"); *cf. Doe 1*, 552 F.3d at 1084 (holding a forum-selection clause unenforceable when a state court held that enforcement would deprive California consumers of any remedy in Virginia courts). This factor tracks the third *M/S Bremen* exception, that "trial in the contractual forum will be so gravely difficult and inconvenient

Although *Richards* involved a forum-selection clause that pointed to a foreign forum, the conclusion is equally applicable when a clause points to a state forum. *Atlantic Marine* made clear that the analysis of forum non conveniens "entail[s] the same balancing-of-interests standard" regardless whether a court is considering transferring an action to another federal forum or to a non-federal forum. 571 U.S. at 61. Therefore "courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum." *Id.* In referring to a nonfederal forum, *Atlantic Marine* did not differentiate between a state or a foreign forum, but rather focused on ensuring that parties obtained the benefit of their bargain. Accordingly, we conclude that the strong federal policy in favor of enforcing forum-selection clauses would supersede antiwaiver provisions in state statutes as well as federal statutes, regardless whether the clause points to a state court, a foreign court, or another federal court. *See Atl. Marine*, 571 U.S. at 66; *Huffington*, 637 F.3d at 25; *Richards*, 135 F.3d at 1296.[7]

---

that [the litigant] will for all practical purposes be deprived of his day in court." 407 U.S. at 18. We discuss this exception in more detail below. *See infra* at 17–21.

[7] Given that many state and federal statutes include antiwaiver provisions, a rule that such provisions preclude enforcement of a forum-selection clause would contradict *Atlantic Marine*'s general rule that forum-selection clauses are enforceable except in the exceptional case. *See, e.g.*, 15 U.S.C. § 78cc(a); 15 U.S.C. § 77n; Ariz. Rev. Stat. § 44-2000; Cal. Civ. Code § 1751; Cal. Corp. Code § 25701; Haw. Rev. Stat. § 485A-509; Wash. Rev. Code § 19.120.130; Wash. Rev. Code § 19.100.220.

Because an antiwaiver provision by itself does not supersede a forum-selection clause, in order to prove that enforcement of such a clause "would contravene a strong public policy of the forum in which suit is brought," *M/S Bremen*, 407 U.S. at 15, the plaintiff must point to a statute or judicial decision that clearly states such a strong public policy. *See Doe 1*, 552 F.3d at 1078–79, 1081. In *Doe 1*, plaintiffs sued in California district court alleging a violation of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1770, despite being bound by a forum-selection clause requiring that any action be brought in Virginia state courts. We determined that a California appellate court decision, *America Online, Inc. v. Superior Court of Alameda Cty. (Mendoza)*, 90 Cal. App. 4th 1 (2001), had clearly held that such a forum-selection clause "contravenes a strong public policy of California," namely to "protect consumers against unfair and deceptive business practices." *Id.* at 1083–84 (quoting *Mendoza*, 90 Cal. App. 4th at 15, 17). Accordingly, we concluded that the forum-selection clause in *Doe 1* was "unenforceable as to California resident plaintiffs bringing class action claims under California consumer law." *Id.* at 1084.

Applying these principles here, we first reject the Suns' argument that the WSSA's antiwaiver provision per se precludes enforcement of the forum-selection clause. As we explained in *Richards*, an antiwaiver provision, without more, does not supersede the strong federal policy of enforcing forum-selection clauses. *See, e.g.*, *Huffington*, 637 F.3d at 25; *Richards*, 135 F.3d at 1295–96. We next turn to the Suns' argument that two Washington state-court decisions establish that enforcement of the forum-selection clause would contravene a strong public policy of the state. *See Acharya v. Microsoft Corp.*, 189 Wash. App. 243, 254–57

(2015); *Ito Int'l Corp. v. Prescott, Inc.*, 83 Wash. App. 282, 287–90 (1996).     Neither case is sufficiently on point. *Acharya* held that it would contravene Washington's public policy to enforce a forum-selection clause that would prevent a plaintiff from pursuing her discrimination claim under the Washington Law Against Discrimination. 189 Wash. App. at 255–56.  While this judicial decision may declare the state's strong public policy in the state's anti-discrimination law, it does not support the Suns' claim that Washington has a similar policy with respect to its securities law.

The Suns' reliance on *Ito International Corp. v. Prescott, Inc.*, is also misplaced.  In *Ito*, the state court considered a contractual choice-of-law provision which required certain issues to be interpreted in accordance with Japanese law. 83 Wash. App. at 287–88.  When considering whether to enforce this provision as to the plaintiffs' WSSA claims, *Ito* first explained that "Washington courts will not implement a choice of law provision if [1] it conflicts with a fundamental state policy *or* [2] if the state has a materially greater interest than the other jurisdiction in the resolution of the issue."  *Id.* at 288–89 (emphasis added) (citing *Rutter v. BX of Tri-Cities, Inc.*, 60 Wash. App. 743, 746 (1991)).   The state court concluded that the second condition applied: "Here, the State has a strong interest in applying its securities act to a partnership involving several Washington defendants, Washington plaintiffs, and property located in Washington." *Id.* at 289.  Accordingly, the state court declined to enforce the contractual choice-of-law provision.    Instead, after conducting a state choice-of-law analysis, it concluded that "public policy favors the application of Washington law"

under the circumstances of that case.[8]  *Id.* at 290.  Because the state court did not find that the WSSA was "a fundamental state policy," but only that public policy favored applying Washington law in the context of that case, *Ito* does not constitute a judicial decision that enforcement of a forum-selection clause would contravene a strong public policy of the forum in enforcing the WSSA.  *Id.*

## B

We now turn to the third *M/S Bremen* exception, which asks whether "trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court," 407 U.S. at 18.  Although the Supreme Court has not directly interpreted this exception, *Atlantic Marine* suggests it is difficult to satisfy.  Where the parties have agreed to a forum-

---

[8] *Ito* observed that Washington had numerous other significant contacts with the transaction, including:

> (1) Ito International is a Washington corporation owning nearly one-third of the shares, (2) all defendants reside or conduct business in Washington, (3) the investment involves Washington property, (4) the building is managed under agreements which each contain a Washington choice-of-law clause, (5) Washington individuals guaranteed the 6.4 percent rate of return, (6) the offering materials emanated from Seattle, (7) selling and marketing activity occurred in Seattle, (8) a Seattle attorney was involved in preparing and reviewing many transaction documents, (9) a cocktail party soliciting investors occurred in Seattle, and (10) many of the acts of alleged fraud occurred in Washington.

83 Wash. App at 289–90.

selection clause, they "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine*, 571 U.S. at 64. A court must dismiss a suit filed "in a forum other than the one specified in a valid forum-selection clause," even if it "makes it possible for [plaintiffs] to lose out completely, through the running of the statute of limitations in the forum finally deemed appropriate." *Id.* at 66 n.8 (alteration in original) (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955)). "[W]hen the plaintiff has violated a contractual obligation by filing suit in a forum other than the one specified in a valid forum-selection clause . . . dismissal would work no injustice on the plaintiff."[9]  *Id.*   As the Fifth Circuit explained it, under *Atlantic Marine*, courts must enforce a forum-selection clause unless the contractually selected forum affords the plaintiffs no remedies whatsoever. *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 774 (5th Cir. 2016); *see also Barnett v. DynCorp Int'l, LLC.*, 831 F.3d 296, 308 n.14 (5th Cir. 2016). "It is the *availability* of a remedy that matters, not predictions of the likelihood of a win on the merits." *Weber*, 811 F.3d at 774.

---

[9] Prior to *Atlantic Marine*, we refused to enforce a forum-selection clause when a plaintiff "provided specific evidence sufficient to demonstrate that he would be wholly foreclosed from litigating his claims against [defendants] in a Saudi forum," because he "lacked the resources to litigate in Saudi Arabia" and was afraid "about returning to Saudi Arabia." *Petersen*, 715 F.3d at 281. It is not clear whether opinions declining to enforce forum-selection clauses because of the claimed obstacles to litigating in the contractually selected forum survive *Altantic Marine*. We need not address this issue, however, because the Suns do not argue that litigation in California would be impossible as a practical matter.

Our precedent is in accord with the Fifth Circuit.  Prior to *Atlantic Marine*, we held that a clause remains enforceable even when the contractually selected forum may afford the plaintiffs less effective remedies than they could receive in the forum where they filed suit.  *Richards*, 135 F.3d at 1296. *Atlantic Marine* confirms this conclusion, and establishes that "the fact that *certain types of remedies* are unavailable in the foreign forum does not change the calculus if there exists a basically fair court system in that forum that would allow the plaintiff to seek some relief."  *Weber*, 811 F.3d at 774.

We now turn to the Suns' argument.  According to the Suns, the third *M/S Bremen* exception applies here because: (1) California courts will not consider their claim under the WSSA due to the choice-of-law provision in their contract; and (2) they will not be able to bring a claim under California securities laws because those laws apply only to conduct occurring within California.[10]  We disagree that the Suns would be unable to obtain any relief in a California court.

---

[10] The relevant provision of California law states:

> It is unlawful for any person to offer or sell a security *in this state* or buy or offer to buy a security in this state by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which the statements were made, not misleading.

Cal. Corp. Code § 25401 (1968) (emphasis added).  Although the law has since changed, *see id.* § 25401 (2016), the law in effect at the time of the transaction applies to the Suns' suit, Cal. Corp. Code § 25704(a) ("[P]rior law exclusively governs all suits, actions, prosecutions or proceedings which are pending or may be initiated on the basis of facts or circumstances occurring before the effective date of this law.").

First, the Suns will have an opportunity to pursue both their Washington and California securities claims without opposition from the defendant. At oral argument in this case, Kao committed to refraining from raising any argument that the WSSA was inapplicable in California state court.[11] Moreover, the district court ordered Kao not to contest the applicability of California securities laws to the transaction at issue, and the Suns may pursue a remedy in district court if Kao violates that condition of dismissal. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) ("A court may make an adjudication of contempt and impose a contempt sanction even after the action in which the contempt arose has been terminated."); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("[T]he power to punish for contempts is inherent in all courts. This power reaches both conduct before the court and that beyond the court's confines[.]" (citation and quotations omitted)).

Not only do the district court's conditions of dismissal and Kao's commitment at oral argument mean that the Suns may pursue a remedy under California and Washington securities laws, *supra* at 20, but (as in *Richards*) the Suns also "have recourse" under California common-law theories, such as fraud or negligent misrepresentation. 135 F.3d at 1296. Unlike with securities fraud, California law does not limit common-law fraud or negligent misrepresentation to conduct occurring within California. *See* Cal. Civ. Code §§ 1709–10. California courts regularly permit plaintiffs to bring such claims for securities transactions. *See Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 174 (2003) (explaining that California

---

**[11]** *See* U.S. Court of Appeals for the Ninth Circuit, *16-35277, Sun v. Advanced China Healthcare, Inc.*, YouTube 15:40–17:13, (May 10, 2018), https://www.youtube.com/watch?v=650qohdOnI8&t=940s.

courts have "entertained common law actions for fraud or negligent misrepresentation" when "misrepresentations have occurred in connection with the sale of corporate stock"). Finally, the Suns would be able to bring claims under California law for any alleged misrepresentations that originated in Palo Alto. *See Hall v. Superior Court*, 150 Cal. App. 3d 411, 417 (1983) (concluding that an offer to buy or sell securities was likely made in California when in-person and telephone negotiations occurred in the state).

Given that the Suns retain remedies under Washington securities law, California securities law, and California common law, they have not carried their heavy burden to show that enforcement of the forum-selection clause would deprive them of their day in court. Nor does enforcement of the forum-selection clause contravene Washington's public policy of protecting investors and deterring securities fraud. *See Richards*, 135 F.3d at 1296. Therefore, we conclude that the district court did not abuse its discretion in dismissing the complaint.[12]

**AFFIRMED.**

---

[12] The Suns do not identify any public interest factors, such as administrative difficulties or local interest, that would make this an exceptional case in which the court should decline to dismiss the case despite the presence of a valid forum-selection clause. *See Atl. Marine*, 571 U.S. at 62 n.6, 64.