# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

CINDIUS ROMNEY as PERSONAL ) 
REPRESENTATIVE for the ESTATE ) No. 74806-8-I 
OF MICHAEL ROMNEY; FARON ) 
BAUER; and KRISTEN CHILDRESS, ) DIVISION ONE 
individually and on behalf of all others ) 
similarly situated, ) PUBLISHED OPINION 
) 
        Appellants, ) 
) 
        v. ) 
) 
FRANCISCAN MEDICAL GROUP, a ) 
Washington corporation; FRANCISCAN ) 
HEALTH SYSTEM, a Washington ) 
corporation; FRANCISCAN HEALTH ) 
VENTURES, a Washington ) 
corporation; FRANCISCAN ) 
NORTHWEST PHYSICIANS HEALTH ) 
NETWORK, LLC, a Washington ) 
corporation; and CATHOLIC HEALTH ) 
INITIATIVES, a Colorado corporation, ) 
) 
        Respondents. ) FILED: July 10, 2017

TRICKEY, A.C.J. — Michael Romney and several other medical professionals (collectively Romney)[1] sued their former employer, Franciscan Medical Group (FMG), individually and on behalf of a putative class. In the first appeal in this case, Romney argued that the arbitration agreements the employees had signed were unconscionable. We disagreed. On remand, the superior court granted FMG's motion to compel individual arbitration rather than class arbitration.

Romney argues in this second appeal that FMG waived its right to compel individual arbitration. Because FMG's conduct in the superior court and during the first

---

[1] For ease of reference, we refer to Michael Romney, the individual plaintiff, as Dr. Romney and the putative class as Romney. Dr. Romney passed away during the litigation. His wife, Cindius Romney, is participating in the case as the personal representative of his estate.

appeal was inconsistent with a right to compel individual arbitration, and the delay in asserting the right prejudiced Romney, we agree. Accordingly, we reverse.

## FACTS

We summarized the facts preceding the first appeal in Romney v. Franciscan Medical Group, 186 Wn. App. 728, 349 P.3d 32, review denied, 184 Wn.2d 1004, 357 P.3d 666 (2015).

> Plaintiffs-respondents Michael Romney, MD, Faron Bauer, MD, and Kristen Childress, ARNP, are former employees of defendant-appellant Franciscan Medical Group (FMG). Each entered into an employment contract with FMG that included agreements to arbitrate all employment related disputes between the parties. The employees brought suit against FMG for damages, statutory penalties, and equitable relief for wage violations on behalf of themselves and the class of physicians, medical assistants, and nurse practitioners. Romney and Bauer brought individual claims for being fired in retaliation for whistle-blowing and for losing their hospital privileges.
>
> Romney, Bauer, and Childress filed suit in King County Superior Court and at the same time requested the court to find the arbitration agreement[s] signed by each of the parties to be unconscionable. FMG moved to compel arbitration. The trial court found the arbitration addendum unconscionable, invalidated it, and denied FMG's motion to compel arbitration. FMG timely appeal[ed].

Romney, 186 Wn. App. at 733-34 (footnote omitted).

While the first appeal was pending, Dr. Romney was diagnosed with terminal cancer. Romney sought to engage in discovery, including discovery for the putative class. FMG agreed to discovery for Dr. Romney's individual claims, but opposed class discovery at that time. FMG argued that class discovery was premature because the superior court or an arbitrator might decline to certify the class.

On February 17, 2015, this court held that the agreements were not unconscionable and reversed the superior court. Romney, 186 Wn. App. at 733. Romney

petitioned the Supreme Court for review. On September 30, 2015, the Supreme Court denied review. Romney v. Franciscan Med. Grp., 184 Wn.2d 1004, 357 P.3d 666 (2015).

On October 2, 2015, Romney attempted to start the arbitration process by reaching out to an arbitrator the parties had discussed using before Romney filed suit in superior court. FMG responded a few days later by inviting Romney to propose "three different arbitrators for the three individual arbitrations."[2] Because the parties disagreed about the availability of class arbitration, they returned to the courts.

This court issued its mandate terminating the first appeal on November 13, 2015.

On December 14, 2015, FMG moved to compel arbitration. This time, it asked the court to compel individual arbitration, arguing that the arbitration agreements did not indicate consent to class arbitration. The superior court granted the motion. Romney appeals.

## ANALYSIS

### Superior Court's Authority

Romney argues that the superior court erred by determining whether the arbitration agreements permit class arbitration. Romney contends that the availability of class arbitration is an issue for the arbitrator. We conclude that it is a threshold issue of arbitrability for the court to decide.

While courts enforce a liberal policy favoring arbitration, the courts should usually decide threshold questions of arbitrability. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002).[3] The court should decide questions

---

[2] Clerk's Papers (CP) at 1558-59.
[3] The Federal Arbitration Act, 9 U.S.C. §§ 1-16, governs these arbitration agreements. Romney, 186 Wn. App. at 734. Accordingly, we must apply substantive federal law concerning arbitration. See Romney, 186 Wn. App. at 734.

3

where the

> contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.

Howsam, 537 U.S. at 83-84.

By contrast, procedural questions, which the court refers to an arbitrator, "'grow out of the dispute and bear on its final disposition.'" Howsam, 537 U.S. at 84 (quoting John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557, 84 S. Ct. 909, 11 L. Ed. 2d 898 (1964)). Courts will also refer to arbitration any dispute which the parties have clearly and unmistakably agreed to submit to arbitration. See Howsam, 537 U.S. at 83.

The Supreme Court has not yet determined whether the availability of class arbitration is a threshold question of arbitrability for the court or a procedural question for the arbitrator. In Green Tree Financial Corp. v. Bazzle, a plurality of the United States Supreme Court held that the arbitrator should decide whether an agreement permitted class arbitration. 539 U.S. 444, 453, 123 S. Ct. 2402, 2407, 156 L. Ed. 2d 414 (2003). Since then, in Stolt-Nielsen S.A. v. AnimalFeeds International Corp., the Supreme Court has pointed out that, in Bazzle, only a plurality agreed on that point. 559 U.S. 662, 680-81, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010). But, in Stolt-Nielsen, the Court did not revisit the issue because, there, the parties had expressly agreed to have an arbitration panel decide whether the agreement permitted class arbitration. 559 U.S. at 680.

The trend in federal courts since Stolt-Nielsen has been that the court should decide whether class arbitration is available. All federal circuits that have addressed this

issue in published opinions have arrived at this same conclusion.[4] Most recently, the Fourth Circuit concluded that a court should determine the availability of class arbitration because of the "significant distinctions between class and bilateral arbitration." Dell Webb Communities, Inc. v. Carlson, 817 F.3d 867, 874-75 (4th Cir.), cert. denied sub nom. 137 S. Ct. 567 (2016). The Fourth Circuit noted that class arbitration would reduce or eliminate nearly all the benefits of bilateral arbitration. Dell Webb, 817 F.3d at 875. It reasoned that the Supreme Court was "but a short step away" from announcing that this was a question for the courts. Dell Webb, 817 F.3d at 875.

We conclude that the availability of class arbitration is a gateway issue of arbitrability. The differences between class arbitration and bilateral arbitration are significant enough that we cannot assume that the parties expected an arbitrator to decide whether it was allowed. The question does not arise out of the underlying dispute over wage violations and retaliation claims. The resolution of the issue should not impact the final disposition of the dispute for each plaintiff. Thus, absent an agreement by the parties, the issue of whether class arbitration is available is a gateway issue of arbitrability properly decided by the superior court.

Romney argues that Washington law requires a different outcome. In Washington, courts must order the arbitration of all disputes "covered by the substantive scope" of an enforceable arbitration agreement. Townsend v. Quadrant Corp., 153 Wn. App. 870, 881, 224 P.3d 818 (2009). But Romney's argument assumes that the availability of class

---

[4] See Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett, 734 F.3d 594, 597-99 (6th Cir. 2013) (concluding that the courts should decide the question and suggesting that the Supreme Court was close to completing its "puzzle" on the issue); Opalinski v. Robert Half Int'l Inc., 761 F.3d 326, 332 (3d Cir. 2014); see also Eshagh v. Terminix Int'l Co., L.P., 588 F. App'x 703, 704 (9th Cir. 2014)).

arbitration is *within the scope* of the agreements. We disagree because the question whether the agreements permit class arbitration is a question *about the scope* of the agreements itself. Therefore, Washington law does not dictate that an arbitrator decide the question.

Here, Romney claims that the parties agreed in the arbitration agreements to submit to arbitration the issue of whether class arbitration was available. The agreements incorporated the American Arbitration Association (AAA) rules. The supplemental rules for class arbitration provide:

> Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award"). The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award.[5]
>
> These rules apply
>
> where a party submits a dispute to arbitration on behalf of or against a class or purported class. . . . These [rules] shall also apply whenever a court refers a matter pleaded as a class action to the AAA for administration.[6]

The rules, by their own terms, apply only when the dispute is already submitted to arbitration, not when the case is pending in front of a court. The rules also allow the parties to seek judicial review immediately after the arbitrator's decision on this issue. The availability of judicial review suggests that the parties did not intend to have an arbitrator make the final decision on this issue.

We conclude that the parties' agreement to have an arbitrator decide the question

---

[5] CP at 1358.
[6] CP at 1357.

under some circumstances is not a clear and unmistakable agreement to have the court refer the question to an arbitrator. Accordingly, it was not error for the superior court to determine if the agreements permitted class arbitration.

## Availability of Class Arbitration

Romney argues that the arbitration agreements permit class action.[7] Romney contends that consent to class arbitration is implied by the failure to exclude class actions explicitly from the arbitration agreements, despite specifically including employment claims that are frequently brought as class actions. We conclude that the agreements do not permit class arbitration because they are silent on the issue and we cannot infer consent to submit to class arbitration from silence.

"[A]rbitration is a matter of consent." Stolt-Nielsen, 559 U.S. at 684. Arbitrators derive their power "from the parties' agreement to forgo the legal process and submit their disputes" to arbitration. Stolt-Nielsen, 559 U.S. at 682. As with any contractual dispute, the parties' intentions control. Stolt-Nielsen, 559 U.S. at 682. Parties may choose which issues they want to arbitrate and with whom they wish to arbitrate. Stolt-Nielsen, 559 U.S. at 683. Therefore, the court cannot compel parties to participate in class arbitration without a contractual basis for concluding that they agreed to do so. Stolt-Nielsen, 559 U.S. at 684.

An agreement to arbitrate disputes does not imply that the party agreed to class arbitration of those disputes, because class arbitration significantly changes the nature of

---

[7] As FMG points out, Romney did not raise this issue in their motion for discretionary review. They also did not assign error to the superior court's ruling on this issue, in violation of RAP 10.3. But Romney did list this as a separate argument in their table of contents and devote several pages to that argument in their brief. Romney also raised the issue below in their motion for reconsideration to the trial court. Accordingly, we review the issue under RAP 12.1(a) and RAP 1.2(a).

7

arbitration. Stolt-Nielsen, 559 U.S. at 685. When the arbitration agreement contains "'no agreement'" on the class arbitration question, the court cannot compel the parties to submit to class arbitration. Stolt-Nielsen, 559 U.S. at 687.

In Reed Elsevier, the Sixth Circuit held that an agreement did not permit class arbitrations because it did not mention class actions at any point and limited its scope to "claims 'arising from or in connection with this Order,' as opposed to other customers' orders." 734 F.3d 594, 599 (6th Cir. 2013). The court agreed with the plaintiff that the agreement did not "expressly exclude the possibility of classwide arbitration," but held that was not enough in light of Stolt-Nielsen. Reed Elsevier, 734 F.3d at 600.

Here, the parties agreed to arbitrate all of their claims. The agreements defined claims as "all disputes arising out of or related to the Employment Agreement, your employment by FMG, and/or your separation from employment with FMG."[8] The agreements cover claims related to wage violations, which are frequently brought as class actions. The agreements explicitly exclude certain types of claims, such as worker's compensation claims, or third-party claims that FMG might bring against Romney if a party sued FMG because of Romney's behavior. The parties agree that the arbitration agreements do not mention class actions at any point.

FMG argues that the agreements were intended to allow only individual arbitration because they repeatedly refer to the employee in the singular and concern the rights of individual signatories. Romney contends that these arguments are overly technical since "you" can be singular or plural and this court has already ruled that the court could order arbitration of claims against a nonsignatory when the claims were inherently inseparable.

---

[8] CP at 63.

See Romney, 186 Wn. App. at 747. But, while Romney has shown that the class members' claims are similar, they have not shown that their claims are inherently inseparable. Moreover, when viewed in context, the "You" in the agreements is clearly singular.[9]

Romney also points out that class action lawsuits are generally available even though contracts are usually written in the singular. But class action lawsuits, unlike class arbitration, do not rely on the parties' consent. Thus, the similarity between these agreements and agreements that often form the basis of class action lawsuits is not evidence of FMG's consent to class arbitration.

Romney attempts to distinguish this case from Stolt-Nielsen by analogizing it to Oxford Health Plans LLC v. Sutter, __ U.S. __, 133 S. Ct. 2064, 2067-71, 186 L. Ed. 2d 113 (2013). Reliance on Oxford Health cannot help Romney. There, an arbitrator held that an arbitration agreement that was silent on the subject of class arbitration permitted class arbitration. Oxford Health, 133 S. Ct. at 2067. The Court explicitly refused to approve of the arbitrator's interpretation of the contract. Oxford Health, 133 S. Ct. at 2070. It affirmed because the parties sought review of the arbitrator's construction of the agreement and the Court could not correct the arbitrator's mistakes. Oxford Health, 133 S. Ct. at 2070-71. A concurrence by Justice Samuel Alito even noted that, if the Court were reviewing the arbitrator's decision de novo, it "would have little trouble concluding that [the arbitrator] improperly inferred '[a]n implicit agreement to authorize class-action arbitration . . . from the fact of the parties' agreement to arbitrate.'" Oxford Health, 133 S. Ct. at 2071 (Alito, J., concurring) (alterations in original) (quoting Stolt-Nielsen, 559 U.S.

---

[9] For example, at the top of the agreement, "You" is the name given to the singular "Physician." CP at 63.

at 685).

Finally, Romney argues that FMG's delay in asserting a contractual right to compel individual arbitration is evidence that it consented to class arbitration via the agreements. A party's "subsequent acts and conduct" may be of aid in interpreting that party's intent. Berg v. Hudesman, 115 Wn.2d 657, 677-78, 801 P.2d 222 (1990). In Berg, a tenant offered proof that its landlord had accepted rent payments for years to argue against the landlord's interpretation of their lease agreement. 115 Wn.2d at 677. In Adler v. Fred Lind Manor, the court noted that conduct was relevant to determining intent, but looked only at the conduct surrounding the formation of the contract. 153 Wn.2d 331, 351-52, 103 P.3d 773 (2004).

Romney does not cite any cases where the court determined the meaning of a contract by looking at a party's conduct during the litigation of the contract dispute. FMG's conduct during litigation is appropriate evidence for waiver, discussed next, but not relevant to establishing its intent at the formation of the agreements.

In short, Romney has not shown that FMG consented to class arbitration. Accordingly, under Stolt-Nielsen, the trial court's interpretation of the agreement was not erroneous; FMG had a contractual right to avoid class arbitration. But, in order to enforce that right, FMG had to timely assert it.

Waiver

Romney argues that FMG waived its contractual right to compel individual arbitration because its conduct was inconsistent with an intent to assert the right and its delay in asserting the right prejudiced Romney. We agree.

"To establish waiver of the right to arbitration, the party opposing arbitration must

10

demonstrate '(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts.'" Wiese v. Cach, LLC, 189 Wn. App. 466, 480, 358 P.3d 1213 (2015) (internal quotation marks omitted) (quoting Letizia v. Prudential Bache Sec., Inc., 802 F.2d 1185, 1187 (9th Cir. 1986)). "Waiver of an arbitration clause may be accomplished expressly or by implication." Canal Station N. Condo. Ass'n v. Ballard Leary Phase II, LP, 179 Wn. App. 289, 297, 322 P.2d 1229 (2013). Whether a party waived its right "by conduct depends on the facts of the particular case and is not susceptible to bright line rules." Canal Station, 179 Wn. App. at 298.

We review a waiver determination de novo. Steele v. Lundgren, 85 Wn. App. 845, 850, 935 P.2d 671 (1997). Washington has a strong presumption in favor of arbitration. Heights at Issaquah Ridge Owners Ass'n v. Burton Landscape Grp., Inc., 148 Wn. App. 400, 405, 200 P.3d 254 (2009). Accordingly, the party opposing arbitration bears a "'heavy burden'" of showing that another party has waived its right to arbitrate. Wiese, 189 Wn. App. at 479 (internal quotation marks omitted) (quoting Steele, 85 Wn. App. at 852).

Although the question here is whether FMG waived the right to compel a specific type of arbitration, we approach this question the same way we would analyze whether a party waived its right to compel arbitration in general. It is logical to analyze the right to compel individual arbitration this way because it also stems from the arbitration agreement.[10]

---

[10] The right to compel arbitration is, essentially, a contractually created affirmative defense. See CR 8(c); Schuster v. Prestige Senior Mgmt., LLC, 193 Wn. App. 616, 634, 376 P.3d 412 (2016). The difference between compelling arbitration of certain claims and compelling a certain type of arbitration changes the analysis in some ways, but should lead to the same conclusions. For

*Knowledge*

This court presumes that someone who signs a document knows and understands its contents. Kinsey v. Bradley, 53 Wn. App. 167, 171, 765 P.2d 1329 (1989). Here, FMG's right to compel individual arbitration stems from the arbitration agreements. No one disputes that FMG prepared or signed the arbitration agreements. Therefore, we presume that FMG knew its rights under the arbitration agreements.

*Inconsistent Acts*

FMG's conduct was inconsistent with the intent to assert a right to compel individual arbitration. First, FMG's original motion to compel arbitration did not include any objections to class arbitration. When Dr. Romney and the other plaintiffs filed this action, they purported to act "individually and on behalf of all others similarly situated" and titled their complaint "PLAINTIFFS' CLASS ACTION COMPLAINT."[11] Romney used the putative class caption again when they moved to void and invalidate the arbitration addendums. In response, FMG filed a motion to compel arbitration. FMG's motion adopted Romney's caption and did not mention individual arbitration.

FMG argues that it was proper to wait until the dispute over the enforceability of

---

example, a party waives its right to arbitration when it has substantially invoked "the judicial process to the detriment or prejudice of the other party." Wiese, 189 Wn. App. at 480 (internal quotation marks omitted) (quoting Subway Equip. Leasing Corp. v. Forte, 169 F.3d 324, 326 (5th Cir. 1999). FMG did not invoke the judicial process to decide the legal and factual issues it now seeks to arbitrate.

But, when FMG wanted a determination on the right to compel arbitration of those issues, it was content to litigate against the putative class. Thus, FMG was able to establish the enforceability of the arbitration agreements against all three named plaintiffs in one action, rather than in three individual actions. By participating in class adjudication to resolve issues of arbitrability before asserting a right to avoid class adjudication, FMG evinced its intent to waive that right in the same way it would have if it had litigated the issues in a court and then asserted a right to arbitrate those issues.

[11] CP at 1.

12

the agreements was resolved before raising the issue of individual arbitration.[12] This argument would be more persuasive if FMG had waited to compel arbitration until the court had determined whether the agreements were unconscionable. But FMG did not wait. It moved to compel arbitration at the same time that it opposed Romney's motion to invalidate the agreements.

Second, when Dr. Romney's illness forced the parties to address discovery while the first appeal was pending, FMG never hinted that it believed that class arbitration was unavailable under the arbitration agreements. Instead, FMG referred repeatedly to the putative class and opposed class discovery on the ground that the court or the arbitrator might decline to certify the class.[13] FMG concedes that it "acknowledged that an arbitrator

---

[12] FMG cites Oxford Health, for the proposition that it is appropriate to wait until after a court has determined whether an arbitration agreement is enforceable to raise any issues about class arbitration. See 133 S. Ct. at 2067. There, the parties decided the class issue after the arbitration issue, but there is nothing to indicate when the defendant first raised the issue. Oxford Health, 133 S. Ct. at 2067.

[13] For example, FMG's briefing to this court and the superior court included the following statements:

> Additionally, if this Court orders full discovery and then compels the parties to arbitration, FMG may be forced to participate in discovery that is unnecessary for the arbitration, as an arbitrator could decline to certify the putative class or narrow other issues in the case.

CP at 611.

> [T]his Court should consider all facts, including whether it is appropriate to allow class discovery when it is still uncertain as to whether a court or an arbitrator will preside over this matter and whether a class will even be certified.

CP at 667.

> Plaintiffs cannot establish that justice requires this Court to permit discovery regarding class claims when it is uncertain whether this Court or an arbitrator will determine whether a class exists, when no class has been certified, and when Dr. Bauer will be able to pursue his individual claims, as well as those of the putative class, once the question of forum is decided.

CP at 674.

> Plaintiffs, however, have failed to demonstrate that putative class members would be harmed in any way should class-related discovery occur after these issues have been determined by either a Court or an arbitrator. Should a class be certified . . .

CP at 675-76.

13

has the power to *certify* a class."[14] An arbitrator has only the powers granted to it by an arbitration agreement. <u>Stolt-Nielsen</u>, 559 U.S. at 682. Therefore, the arbitrator would have the power to certify a class only if the agreement permits class arbitration.

FMG contends that it would be "absurd" to use its statements during a discovery dispute as evidence that it waived a right to compel individual arbitration because, at the time, it "was facing the very real possibility of the case being litigated in court."[15] This argument would be persuasive if all of FMG's arguments during class discovery had assumed that FMG would lose the appeal and have to litigate the matter in court. But FMG's arguments, which discussed which forum might ultimately hear the case, and how a superior court or an arbitrator might decline to certify the class, attempted to demonstrate why, win or lose the appeal, class discovery was premature. One would have expected FMG to argue that, if it won the appeal, class arbitration would not be available at all. Yet FMG's arguments revolved around whether the class was viable, not whether class arbitration was available.

Third, FMG's argument during its first appeal is inconsistent with an intent to assert the right to compel individual arbitration. At oral argument, FMG used the fact that Romney was bringing a putative class action, and had engaged counsel for the class on a contingent-fee basis, to reassure the court that the agreements' provision requiring plaintiffs to share in the costs of arbitration, unless they showed they could not afford it, was not unconscionable. Counsel for FMG's response to the court's concern about the plaintiffs having to prove they cannot afford to pay arbitration costs was

> [w]ith respect to the cost-shifting . . . the test is, does the imposition of the costs of the arbitration effectively prohibit the plaintiffs from bringing it. Well,

---

[14] Br. of Resp'ts at 23.
[15] Br. of Resp'ts at 24.

14

> here you have med- established medical professionals who are seeking to represent a class and who propose as class counsel a well-established plaintiffs' law firm that's undertaken this on a contingent-fee basis.[16]

If FMG had intended to assert a right to compel individual arbitration, it would not have used the fact that Romney filed a putative class action complaint and hired class counsel in their defense of the arbitration agreements.

We conclude that these actions show that FMG's conduct was inconsistent with an intent to compel individual arbitration.

FMG argues that Romney cannot show that it waived its right to compel individual arbitration because Romney cannot show that FMG consented to class arbitration. FMG relies on the standard for determining whether a contract permits class arbitration. See Stolt-Nielsen, 559 U.S. at 684. This argument fails because whether there is evidence that FMG consented to class arbitration is not the same question as whether FMG waived a right to compel individual arbitration.[17]

FMG also argues that it did not have to raise the issue of class arbitration because it was "equally incumbent upon [Romney] to make the argument that class arbitration was appropriate."[18] But, by bringing their claim as a putative class action, seeking class discovery, and actively promoting the interests of the putative class at every turn, Romney was impliedly asserting that they believed class adjudication of the dispute was available, regardless of the forum.

---

[16] Wash. Court of Appeals oral argument, Romney v. Franciscan Med. Grp., No. 71625-5-I (Nov. 17, 2014), at 10:34:42 – 10:35:27 (on file with court).

[17] By way of analogy, compare consent to personal jurisdiction via a contract with a waiver of an objection to lack of personal jurisdiction by conduct during litigation. C.f. Kysar v. Lambert, 76 Wn. App. 470, 485, 887 P.2d 431 (1995) (examining consent to personal jurisdiction) with Boyd v. Kulczyk, 115 Wn. App. 411, 415, 63 P.3d 156 (2003) (noting that a party may waive a lack of personal jurisdiction).

[18] Br. of Resp'ts at 32.

*Prejudice*

To determine whether there has been prejudice, "we consider the extent of the delay, the degree of litigation preceding the motion to compel [arbitration], the resulting expenses, and other surrounding circumstances." Wiese, 189 Wn. App. at 481. "[D]elay amounts to prejudice when there is no good excuse for it." Steele, 85 Wn. App. at 858. But, delay caused by the conduct of one party, is not "evidence of waiver by the other party." Lake Wash. Sch. Dist. No. 414 v. Mobile Modules Nw., Inc., 28 Wn. App. 59, 63, 621 P.2d 791 (1980).

Here, FMG's failure to raise the issue caused prejudice to Romney in the form of delay and litigation costs. There was an approximately two-year delay between when Romney brought their suit and when FMG first asserted its right to individual arbitration. Romney filed their class-action complaint in November 2013. FMG informed Romney that it would be seeking individual arbitration via e-mail in October 2015. FMG did not assert a right to compel individual arbitration in any court document until December 2015.

FMG argues that the Romney caused the delay by seeking to void the arbitration agreements and pursue class discovery. But the main reason for the delay is that FMG appealed the superior court's order voiding the arbitration agreements before raising the issue of individual arbitration.

Because FMG failed to assert its right to individual arbitration when Romney moved to void the agreements, Romney expended time, energy, and resources on this litigation, including a direct appeal and petition to the Washington State Supreme Court. Romney also engaged in costly litigation over the availability of class discovery. Thus, Romney suffered significant prejudice from FMG's delay in asserting its right.

16

We conclude that FMG waived its right to object to the putative class preceding to arbitration. Because of our resolution of this issue, we do not address whether FMG would be equitably estopped from asserting a right to compel individual arbitration or whether the trial court exceeded the mandate by entering an order compelling individual arbitration.

We remand for the trial court to enter an order sending the putative class to a single arbitrator under the terms of the agreements.

Trickey, ACJ

WE CONCUR:

Cox, J.